17-2612 James Byrnes v. Hayes Beer Distributing Co. And will counsel on Byrnes please approach? Come on. Oh, oh, oh. Don't shout away from the microphone. Why don't you tell us who you represent and how much time you'd like. My name is Joe Turner. I represent Hayes Beer, the defendant of Pell Inn. And I would like 10 minutes. Okay. And time for rebuttal? Two minutes. Okay. Robert Cervone on behalf of the plaintiffs, Byrnes, etc. I would also request 10 minutes. All right. And the microphone in front of you is not for amplification. It's strictly for recording. And because we have a lot of competition outside, if you would keep your voices up, we'd appreciate it. And I'll also tell you that all of us have read the briefs. We're very familiar with the facts of the case and your arguments. And so you don't need to spend a lot of time rehashing the facts, certainly. And with that, Mr. Turner, would you like to proceed? Thank you, Your Honor. Good morning. This is, of course, I appeal the circuit court's order remanding a wage claim under the Illinois Wage Payment Collections Act, which I generally refer to as the Wage Payment Act, to the Department of Labor for disposition. After rejecting the IDOL's dismissal of that claim, the IDOL had found that the claim was preempted by federal labor law under Section 301. In a very short opinion, the circuit court found that the existence of a collective bargaining agreement that governed the essential terms and conditions of employment for the delivery drivers at issue, and I will talk about a few of the facts today just to make a couple of points on that, that that was irrelevant to the wage claim because the core of the petitioner's claim is that the practice at issue, which is a deduction of commissions based on stale beer being found in the sites, is illegal under Illinois law. Can I just spend a minute on the standard of review? Yes. And you both appear to agree to it, but it sounds odd to me. You say the standard is whether the trial court abused its discretion in finding that the department, the ALJ's determination was clearly ammonious. Correct. Why is this case any different than any other administrative review case where the circuit court simply looks at what the agency did and determines whether it was clearly erroneous? What does discretion have to do with it? Well, as I understand it, Judge, because the circuit court was reviewing a mixed question of law and fact, that it falls under the clearly erroneous standard that applies. Right. I don't disagree with you that it would seem, citing the case law that exists, that it would appear to me that the appellate court would simply be reviewing the circuit court for clear error. Well, actually, in most administrative review cases, we review the decision of the agency, not the circuit court. Correct. And we would review it under the clearly erroneous standard. Correct. Okay. I think that's ultimately where we get to, but it seems like there's a step in there that's been layered in between. I'm not clear. Are you disagreeing with what you put in your briefs? Well, what I'm saying, Judge, is I think at the end of the day, we get to a clearly erroneous standard. Well, what do you mean you get to? Isn't it a clearly erroneous standard, or is it an abusive discretion standard? Well, I think it's an abusive discretion standard on the basis of whether or not the courts – whether the court disregarded a reasonable interpretation of the law that exists, which is the 301 preemption doctrine. Then how do we get – I'm sorry? Then why do we move from there? Well, under my thinking, the decision of the department, the agency decision, was correct. The court overturned the correct decision. I don't believe – I believe the court abused its discretion. That's the language used by the courts in elucidating the standard, because it did not apply well-recognized standards of law, in this case the preemption doctrine. So if what we're effectively being asked to do is – I think you're looking at whether or not the court, based on the laws that exist, abused its discretion in this particular instance because it was a case of administrative review. So we shouldn't – just as Mason indicated, usually we look at the administrative agency's decision, and we don't consider the circuit court's decision. Yeah. Well, I would say we have to do that, Judge. Well, but you're saying the law – you're saying something different, so I'm just trying to figure out if there's a case that you're relying on that says it should be different in this circumstance. Well, I believe we stated the standard in our brief. I unfortunately don't have the case right in front of me, but in this particular instance, that seemed to be what the law was suggesting. I think at the end of the day – I'm sorry I asked, Mr. Turner. That's okay. I'll leave the circuit court to make that decision. Next up, question of law, in fact, in my head right now. That's right. The court here went on to say, in this decision, that simply put, the claim here is not founded upon the parties collected by the agreement, and the same need not be interpreted to resolve the matter. But the limited analysis that the circuit court did, did ignore recognized principles of preemption law, and at the end of the day, that's really the question. At the end of the day, the question is, tell me exactly what it is in the CBA that needs to be interpreted. Sure. Let me just throw a couple of facts in. Why do I need the facts? Tell me, do I really need specific facts involved in the employee's grievance to make this decision, or do we look at the legal character of the claim? Well, you look at, under preemption, it's a case-by-case analysis. So you do have to look at the facts, and you do have to look at the claim. But you disagree with the United States Supreme Court. No, I don't. It said in Nevada that you look at the legal character, not specific facts involved in the employee grievance. Well, I think you have to look at the legal character of the claim. Okay. But you also have to understand, the second part is, in order to resolve that claim. Well, we're not resolving it. Right now, we're just talking about preemption. Yes. So we look at the legal character. So tell me about the legal character of the claim. What is it about that legal character that's in the CBA? The legal character of the claim is that the Illinois Wage Payment Collection Act is a mechanism to enforce contracts to pay wages. That's specifically what it is. Several courts have elucidated that in the Northern District and elsewhere in the Senate. The Circuit has also said that. That's the nature of it. If you look at Section 2. What's that? You're saying it has to be a written contract? No, I'm saying it has to be an agreement between two parties. Without an agreement between two parties, there is no claim under the Illinois Wage Payment Act. So you have to figure out what that agreement is. No, because under the Act, you have to have an agreement. And their claim is, there was no agreement. There was no signature or agreement to do this. So if there's no agreement, there's no claim. Exactly, it's just the opposite, because there would be a claim because it says that the employee has to agree to the deduction, right? Isn't that what the Act says? That is what the Act says. But you're ignoring federal labor law, which is supreme. And what federal labor law says, if the Illinois Wage Payment Collection Act says, it is an act which is a mechanism to enforce an agreement to pay wages. You have to look at what the agreement to pay wages is. The agreement to pay wages is a collective bargaining agreement. That's beyond the statute. Tell me, you mean the exact phrase that has to be interpreted here. What is the phrase that has to be interpreted? You have to determine whether or not, well, again, Judge, you're suggesting wrongly, I respectfully submit, that a collective bargaining agreement is only the ones on a page, which has been rejected time and time by the Supreme Court. Wait a minute. You keep talking about this. You're implying things and so forth. That may be something that goes to the weight of the claim itself. But as far as preemption is concerned, there has to be something in that agreement. What is it in that agreement that we're interpreting? We have to interpret something in the agreement. What do the wages do? What is the thing about a deduction? What do the wages do and what are the wages earned? That's not the issue. That is exactly the issue, Judge. Because at the end of the day, the question is, am I deducting wages that were earned and owed by the employer to the employee? Tell me the language in the CBA that you're talking about. Article 12 is the wages section. It states what commissions are due. Article 13 sets forth what are the responsibilities of the driver, which can be certainly implied, if not explicit, to be required in order to earn the commission's due. If you look at the Illinois Department of Labor's actual regulations on commissions due, which you can find, I think, at 305.510, they actually talk about that you have to interpret the agreement between the parties to determine when a commission is earned. Here, the underlying claim is whether or not there was a deduction made from wages earned. Well, were the wages earned or not? Well, what agreement do you have to interpret to determine whether or not the wages were earned? When they are commissions? It's important to note, these are not hourly paid employees. And the way that the labor agreement was negotiated by the parties was that those commissions get paid within about two weeks of the time that the case of beer gets delivered. And that's important because even though the payment is made within two weeks of the case being delivered, the labor agreement also provides that there are responsibilities of the driver, which exist post-delivery of the beer and, in some instances, post-payment of the commission on the beer. So the question under the labor agreement is when were the payment, when were the wages earned? Okay. So let's just assume that the driver discovers beer close to its sell-by date on the shelf, as they're supposed to do. They take it back, right, before the sell-by date. Hayes suffers the same loss because that beer is returned. It's not sold. But the driver gets no deduction from his or her wages, right? Correct, under the practice that exists between the parties, which is a part of the party's labor agreement. So then you have the driver who misses a case of beer, and it sits on the shelf after its sell-by date. It's discovered by the person who follows up, and that case of beer then is sent back to Hayes. Same loss to Hayes, right? But now the driver under-earned the commission. I don't understand how the mechanism works in terms of wages. It sounds like a penalty to me. Well, that's why you as a judge, again respectfully, or the Illinois Department of Labor as an agency, is not supposed to be interpreting the party's practices and what is and what is not a part of the party's labor agreement. Federal labor law says that's a matter of federal contract law, not of state contract law. And because the parties here, as part of a much broader national labor scheme, which has existed since the 1930s, has provided that those parties, we don't want them going on strike every time they've got an issue over whether or not the labor agreement's been violated, so let's have a grievance and arbitration provision, and let's let an arbitrator decide that. And that is a large part of national labor policy, which is why in the Lincoln Mills case in 1957, after the enactment of the Labor Management Relations Act and the insertion of Section 301 providing for federal jurisdiction over labor contracts, the Supreme Court held that we're not going to have state laws interpreting those agreements because we could have mixed results. We're going to have it under a federal scheme. And we like the fact that the parties have agreed to handle these disputes through labor arbitration. So now you get to your law of the shop argument. Are there cases? Sounds to me like the law of the shop is if the union and the employer have been doing things for years and everybody understands that, we're not going to disrupt that. Somehow that enters into the interpretation of the CBA. Which of your cases deal with law of the shop that are detrimental to the employees? Well, there are a number of laws of the shop that are detrimental to employees. They could be innumerable, just like there are laws of the shop that are not necessarily explicitly stated in a labor agreement but are part of the way that the labor agreement is administered, again, by the parties. The question was what case. What case do I have? I don't believe I have a specific case, but with due respect. Where a court has said something's not covered by the CBA. It's not laid out in the CBA, but there's a law of the shop that's detrimental to the employee and we're going to enforce that. I don't know that I have a case that I could give you right now. But, again, you would be highly unlikely to ever find that case because, in general, federal courts and state courts are not adjudicating actual disputes between employers and employees under a labor agreement because that is left to the grievance and arbitration provision. And in most cases, a federal court is making a very simple determination. That determination, is this matter preempted by Section 301? Meaning, does it require the interpretation of a labor agreement? And if it does, we're going to send it to the grievance and arbitration procedure and let an arbitrator decide that issue. That's the very nature of preemption in and of itself. Courts aren't deciding. I don't know of any cases that I could cite you off the top of my head where a collective bargaining agreement issue, like whether or not an employee was paid correctly, was actually adjudicated in a federal courthouse. Because most, if the large majority of labor contracts have a labor and arbitration, excuse me, a grievance and arbitration provision, would say that's where those claims are going to be adjudicated. But this claim has to do with a statute. Every claim, almost every claim in which federal preemption is argued has to do with a statute. So it has to do with a statute. So that doesn't end the dispute. But it does. It is relevant. So, okay. So I'm going back to three things. First, you're not saying that the plaintiff, the plaintiff is not saying to you that you violated the CBA, right? In effect, yes. Why? Why do they say that? They mentioned, I don't even know if they mentioned it, I think, in passing as a result of your answer. But I think in their complaint, I don't think the CBA is, any portion of it is discussed. They don't have to say it, Judge, because federal preemption applies on one of two grounds. When the claim is grounded, is grounded in the collective bargaining agreement. It's grounded in the statute. No, it's not. Respect to you, Judge, let me just explain why not. The Illinois Wage Payment Collection Act only exists to enforce contracts, okay, to pay wages. So if there's no contract to pay wages, there's no claim under the Illinois Wage Payment Collection Act. So your argument is it can never have a claim that's not preemptive. All claims under the Wage Act in every state in the country should be preemptive. And you know there are many cases out there under the Wage Act that have found the court is not preemptive. But that's your argument. That's not my argument at all, Judge. All right, respectfully. Because I didn't write the Illinois Wage Payment Collections Act. The state and Illinois legislature did. And what the Illinois state legislature decided to say is we determine wages based on there has to be an agreement. Not every wage payment, not every minimum wage law around the country. For example, the Illinois minimum wage law is not necessarily preemptive. Wait, wait, you're still missing the point because nobody says there isn't an agreement. There is a CBA. Absolutely right. And we can look at the CBA. The question is do we interpret the CBA? That's the answer. And there you still haven't answered my question. What is it in the CBA that talks about deductions? What is in the CBA is whether or not a wage was earned. No, we're not talking about wages. Okay. We're talking about a deduction for returns. What deduction? Was there a deduction made? We'd have to interpret the claim. That's the claim. That's the claim. We've got to take the character of the claim. That's right. That's what it says. So I'm trying to figure out what it is in the CBA. We can look at the CBA. There is a contract. Okay. That's fine. That's not the issue. The issue is what is it in there? Tell me. Give me the words where it talks about deductions. Well, there are many words in the contract that talk about deductions. Okay, give me some. But they don't necessarily. Tell me about the deductions. Well, I can read to you the miscellaneous section that talks about deductions for abused equipment. That's not what we are talking about. But again, you're ignoring respectfully. You're suggesting that if I don't have something in here that says specifically I can conduct wages for stale beer, then I don't have to interpret the party's labor agreement because this is not the party's labor agreement. The party's labor agreement exists well beyond the bounds of the four corners of this document. And that has been stated over and over again. You're talking in the asterisk. There's very little law on that issue with regard to the practices of the employer and employee. Most of the cases talk about whether there's a substantial issue with regard to something in the CBA. And you have yet to show any language having to do with deductions for an equipment broken. Yes, we have to interpret that. The court would have to interpret that. So that would go to arbitration. But we're not talking about that. Tell me the clause in there that has to do with these deductions for the wages which are illegal under Illinois law. I can only state it again, Judge. There is no specific clause in the labor agreement that says you can deduct beer, deduct your stale beer. That does not end the question, however. That's a far too simplistic examination of what is required for federal preemption. If you have to interpret to determine whether the wages were earned, and we know the agreement that determines whether the wages were earned. That's not the issue. Is that an earning question? Is it? Yes. No? It is. It's a deduction question, which is different. They earned it when they, you know, before, but now that it's taking money away, it's a deduction. You just said they earned it before and then you took it away. Right. That was your determination. The Illinois Department of Labor and its regulations would disagree with you, specifically, and I'll read that for you. Here's what the Illinois Department of Labor says about a commission. A commission is the compensation for services performed pursuant to an employment contract or agreement between the two parties. In order to be entitled to receive compensation for commission under the Act, the commission must be earned under the terms of the agreement or contract. Now, how do we determine and what document do we go and interpret to determine whether the commission was ever earned in the first place? Well, that's not a deduction. But I'm saying that's wrong because if it wasn't earned, you wouldn't have paid it. So you paid it. So apparently it was earned. No, no, no, Judge, but what you're saying is that was an issue between the union and the employer when they designed the payment structure under the labor agreement. That says we pay on a weekly basis. You'll see that in the labor contract. You deliver the beer, we pay. But it also says in the labor agreement there's things that you have to continue to do. Right. And your suggestion is that the labor agreement doesn't cover that, that it doesn't cover when it was earned. And I would argue with you it's the only agreement that says that. It's in the language. Where is it talking about that? Judge, all you have to do is accept it. You've got to consider it. It's not in there. It has to be interpreted. What has to be interpreted? What it is to have an earned commission under the terms of this labor agreement. Why is that? That's for an arbitrator to determine. Even taking the provision regarding the employee's obligation to check the sell-by dates doesn't say anything about if the employee defaults in that obligation, the commission will become unearned. That's right. To that extent. It doesn't say that. It doesn't say that. So who has to determine that? The labor arbitrator. That's who has to determine that under the federal common law of collective bargaining agreements. That's precisely, Judge, you couldn't have stated it more simply. That's precisely why Section 301 exists, so that state courts don't make that determination. Hays could have included it, right? I'm sorry? Hays could have included it. The parties could have included it in the CBA. The parties could have written an agreement that's a thousand pages long, and I will tell you, Judge, as a labor lawyer, we arbitrate matters all the time. They provide it. It has nothing to do with what's in this labor agreement, but you have to interpret the practices of the parties and what was the intent of the parties, even if the intent of the parties is not necessarily raised here. For example, the parties could have negotiated an agreement under which commissions aren't paid until the beer is sold off the shelf. You see that in many commission contracts for other people. But here, the labor agreement provides it's paid on the front end. I could be wrong, Judge. I could be wrong that the labor arbitrator could decide that it was earned the day it was delivered. But that's not the question. The question is, who makes that determination? And that requires an interpretation of the parties' labor agreement as a whole. Whether it's stated in the agreement or not stated in the agreement. Whether it's stated in the agreement or not, because it is the agreement ultimately that has to be interpreted to determine when something is earned, when wage is due, all of those issues. When a wage can be deducted. It's not whether or not it's right or wrong, it's who's going to decide whether or not there's going to be some compensation. That is the nature of federal preemption. What the Supreme Court said is, that's a matter of federal law, and we pull it out of the state law scheme if we have to interpret a labor agreement. I'm sure I've used up my time. I think we used up your time. All right. Anything you'd like to finish up with, Mr. Turner? We will give you some time for rebuttal. Yeah. Only to say that it's quite clear that this is an issue which is appropriately put before an arbitrator. To suggest that an arbitrator could not decide this issue ignores the fact that what is within the scope of arbitration in a collective bargaining is very liberally construed and extremely broad. The issue before an arbitrator would be, have the employees been paid for all commissions due? That's not the issue, though. I mean, we'll find out what the other side has to say about that. But, you know, you're not talking about that the character of the case that was filed has to do with deductions. But you seem like you don't want to talk about that. You want to talk about it. Oh, no, Judge, I'm happy to talk about it. Well, let's talk about it in relation to the agreement. Absolutely. I'll do that all day with you. For there to be a claim under the Illinois Wage Payment Collection Act, there has to be an agreement. For there to be a determination that a wage has been earned, there has to be an agreement. Who's going to interpret that agreement? Tell me what we have to interpret. You see, that's the problem. We know there's an agreement. We know there's an agreement. Thank you. Thank you. Okay. Mr. Ceron? Thank you. I'd like to pick up essentially where you had left off. I think that the character of the claim is one of the essential factors here. And I think it is a mischaracterization to say that the character of the claim is about enforcement of the contract. Council said that the Illinois Wage Payment Collection Act is a statute that's intended to enforce agreements. Well, there are decisions that make that reference to other sections of the statute. But this claim is founded on Section 9. And Section 9 creates a separate and independent right for an employee not to have money deducted from wages earned unless they provide a written consent at the time. But in order to determine wages earned, don't we have to look at the agreement? No. We were just told that that's where you start. Until today, the defendant has never asserted that this practice is somehow a part of the commission structure. Nor could they because it's clearly no reference to it in the collective bargaining agreement. And in their submissions to the court and to the IDOL, they never made that assertion. But the fact of the matter is that the money was earned and many weeks later, money was deducted from what was earned. Well, but that's the question that Mr. Turner is posing is, was it earned? Because the agreement talks about stale beer and that they have certain duties and responsibilities as drivers to have that removed. And so because they pay within a certain number of days before the beer becomes stale, because they get paid every two weeks, then is it really true that they've earned that commission? Maybe his argument is no, that has to be determined based upon the agreement itself. You have to look at those words because of their duties, responsibilities. They haven't earned anything until after the expiration of the beer. Then they've earned it. Otherwise it could be deducted. It's a clever argument, but the fact is under Section 9 of the Pavilion Wage Act, the parties cannot accomplish that end without the employee signing a consent to the deduction. If the parties want to agree that the commission isn't earned until the beer comes off the shelf, they can agree to that. But that means that they have to accomplish it by calculating the wages earned and paying that amount as opposed to paying an amount and then deducting it from their wages. That's what Section 9 prevents. And that right is independent of the collective bargaining agreement. And I think that it's important to note in the statutory scheme that the legislature itself drew those distinctions because there are provisions in the statute, Sections 4 and 5, where the legislature said that the rules could be modified by a collective bargaining agreement. And there is no exception in Section 9 where the legislature said that a collective bargaining agreement could modify the deduction provisions. And in terms of counsel's reference to the law of the shop, what Hayes is effectively arguing is that if an employer violates the law, whether pursuant to a collective bargaining agreement or otherwise, for long enough, then it suddenly has impunity. And that's just not the case. The United States Supreme Court, in the Alice Chalmers case, and the Illinois Supreme Court in Gonzales v. Prestress Engineering, both articulated that the parties to a collective bargaining agreement cannot contract for what is illegal under state law. And that goes back to what I was just saying. Well, there's nothing per se illegal about a beer distributor saying to its drivers, you've got to check the freshness dates on the product you put on shelves and you have to get it off the shelf before the sell-by date. We don't want stale beer on our customers' shelves. So you say they can't accomplish this. I assume your position is even if they put it in the collective bargaining agreement that stale beer left on the shelves will result in a deduction from the employee's wages for the value of the beer. You would say they can't do that because of Section 9, right? They can't do it unless they take the next step and the employee signs the concession. Well, but employees through unions agree to all sorts of concessions. And those are binding on the employees. So you're saying because of Section 9, notwithstanding the negotiation with Hays, each employee, each driver would have to sign an individual consent. And if they didn't, there's no way Hays can recover the value of the stale beer, right? That's correct. Okay. So is there any way Hays could have enforced the requirement under the collective bargaining agreement that all drivers agreed to that they're going to check these freshness dates? How could they enforce it? Discipline. Okay. The meaningful areas are right under the meaningful rights clause in this collective bargaining agreement to impose discipline. And if you don't fulfill your duty to check the codes and return the beer, you're going to get discipline. And the discipline arising out of that would be subject to the grievance procedure. But they cannot, under state law, make the deduction. And this goes back to what I said earlier. If they want, if Hays wanted to make this part of the commission structure, they could have bargained over that. They could have specifically said that. But you said they can't. No, but what I'm saying is if Hays wanted to bargain in a way that reduced commission, the commission paid based on stale beer, they could do that. But they have to do it in advance, before the money is paid out to the employee. Because once the money is earned, a deduction cannot be made absent the employee's consent. But this issue is, when was it earned? And in order to make that determination, we have to interpret CBA. Well, it was earned and it was paid. And it was only subsequently that the money was deducted. Because they earned it. And in their brief, they concede that Hays and his drivers follow a practice of deducting charges for stale beer from the commissions of the drivers. So they do not contend that this is somehow a component of the commission structure. They themselves admit it is a charge against the employee, a deduction, that requires their written consent. What's that page with that? That was on page 7 of their opening brief. So in the end, we're talking about an affirmative right that's established by the statute for the employees that is admittedly been violated. And they're entitled to a remedy for that. And there is no interpretation of the agreement required for that purpose. Thank you. Thank you. Just briefly, to a couple of his points. Again, the issue is whether or not the money was earned or not.  And the character of claim is, is this an unlawful deduction from wages? And if the wage was never earned pursuant to the regulations related to commissions, then there can't be a claim against it. So who has to interpret that? He's 100% correct. But again, Judge, there are any myriad of things that the parties could have negotiated in the labor agreement. The question simply here is whether or not resolution of this claim requires an interpretation of what the parties in fact have agreed to within the labor agreement. That's not necessarily correct, Judge, because that's for the arbitrator to determine. The question is whether or not it requires an interpretation of the labor agreement. Here, there's certainly enough within the labor agreement to understand that whether or not, particularly under the Illinois Wage Payment Act, because the Illinois Wage Payment Act, again, is premised on whether the wages earned pursuant to an agreement. We have to go see whether the wages were earned pursuant to the agreement. Here, there are commissions. The Illinois Department of Labor says commissions not are, if we want to figure out what a commission is earned, we have to go look at the party's agreement. We're not going to enforce it unless we see that it was earned under the party's agreement. The Illinois Department of Labor also says, and it's FAQs, that you may not have a claim under this Act if, in fact, we would have to interpret the labor agreement. They recognize the existence of federal preemption in that instance. And to your other point, there's a reason that federal preemption applies in a case like this because it's part of a much, much larger federal scheme. Here, for example, the issue of whether or not Hayes could go to an individual employee and say, okay, now I need you to sign this because I want to deduct your wages. If I were to do that, there's a very strong chance that Hayes would be, in fact, subject to an unfair labor practice charge for dealing directly with an employer instead of their exclusive borrowing representative, the union. And it would be a violation of Section 885 of the National Labor Relations Act. The reason that federal law applies, the reason that arbitration applies, is because this is one part of a much larger scheme. So for a state law to exist, which says even where there's a collective borrowing agreement that decides when wages are earned, we're going to insert, you know, another mechanism into a matter which should be left to the parties to negotiate. Well, under federal law, it's not unlawful to do it, is the full reason why preemption ultimately exists. That's all I have to add. Thank you very much. All right. Thank you both for your arguments here this morning and your briefs. We will take the matter under advisement, and we will briefly stand in recess.